UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY G. HENSON, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 1:10-cv-1009-WTL-DML |
| | ) |
| BOYD LUNSFORD, et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Timothy Henson, a former inmate of the Pendleton Correctional Facility ("Pendleton"), brings this action pursuant to 42 U.S.C. § 1983, alleging that the defendants, officer employed by the Indiana Department of Correction ("IDOC") at Pendleton, violated his constitutional rights with regard to treatment he received after he was found to have been involved in an altercation with another offender.

**I. Background**

On August 2, 2008, defendant Jacox observed Henson interacting physically with another offender and concluded that the two were fighting. Both Henson and the other offender were transported to the Captain's office for questioning with regard to this incident. Henson now sues, alleging in this Third Amended Complaint, the following claims with regard to the incident: (1) defendant Lunsford, who transported Henson to the Captain's office, used excessive force in violation of his Eighth Amendment rights when attempting to subdue him during an altercation; (2) defendants Waterman, Beautry, and Ruttan failed to intervene and/or protect Henson from Lunsford's alleged use of force; (3) defendant Jacox retaliated against Henson in violation of his First Amendment rights when he filed a conduct report against Henson related to the incident; (4) defendant Nickles retaliated against Henson by refusing to process his grievances; and (5)

defendant Rains retaliated against Henson by failing to report or discipline the other defendants for their actions. The defendants move for summary judgment. Henson has not responded.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

As noted, despite multiple extensions of time, Henson has not filed a timely response to the motion for summary judgment. The consequence of his failure to do so is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir.2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir.1997).

## III. Undisputed Facts

On the evening of August 2, 2008, defendant Jacox, a Correctional Officer at Pendleton, observed Henson engaging in direct and aggressive physical contact with another offender, Dejuan Emerson ("Emerson"). Offenders are not permitted to engage in aggressive and direct physical contact. Based on his observation, Jacox believed that Henson and Emerson were fighting. Jacox

therefore called in a Code "10-10" or a "fight" over his radio and then ordered all offenders to their cells so that they could be secured.

Upon returning to his cell, Henson was questioned and visually examined by two correctional officers to determine if he had sustained any injuries during the incident. Henson and Emerson claimed that they were not fighting but were simply engaging in "horse play" or rough housing, wrestling, and shadow boxing. At that point it was determined that both Henson and Emerson would be escorted to the Captain's office in the Duty Office Building for questioning regarding the incident. Henson and Emerson were then handcuffed behind their backs and escorted to the Duty Office Building by defendants Lunsford and Waterman. During the walk to the Duty Office Building Lunsford believed that Henson began to physically resist him. In response, Lunsford gave him verbal warnings and commands to stop resisting. Henson did not follow Lunsford's commands and a struggle ensued. During the struggle Lunsford used physical force to subdue Henson and regain control of the situation by placing Henson down on the grass on his stomach with his face to the side and placed one knee on the ground and one on Henson's back. During his struggle with Henson, Lunsford called in a Code over his radio requesting assistance. At the time of the altercation, Henson outweighed Lunsford by approximately fifty pounds.

When the altercation between Henson and Lunsford began, Waterman helped Emerson down onto his knees and then onto his stomach in the grass approximately 15 to 20 feet away for his own safety. Waterman then assisted Lunsford in subduing Henson. Waterman did not believe that Lunsford's use of force was excessive.

The altercation between Lunsford and Henson transpired very quickly and only lasted for approximately 2 minutes. During the altercation, both defendants Beaudry and Ruttan were inside the Duty Office Building more than 15 feet away and could not see Lunsford or Henson from their

location. Upon arriving at the Duty Office Building, Henson was placed in a dry cell. Beaudry and Ruttan interviewed Henson regarding the incident and Henson was taken to the medical infirmary to be evaluated and to have his injuries photographed. Henson's complaints consisted of discomfort and swelling to the left side of his face and head, and a red and bruised left wrist. Henson was seen by medical and released to Waterman who escorted him back to the dry cell in the Duty Office Building.

Henson was later returned to his cell. Jacox came to check on Henson and asked to view his injuries. At that time, Henson asked Jacox to contact the superintendent, Brett Mize, and the internal affairs department regarding Lunsford's use of physical force during transport to the Duty Office Building. Henson threatened that if Jacox did not contact them that he would provide information to internal affairs and the Superintendent regarding his alleged drug use on duty. Henson then informed Jacox that he had already provided the information and would provide additional information if he did not honor his request.

After the incident, Henson was placed on "red tag" status pending further investigation into the events of that day. Henson's red tag status resulted in his temporary removal from general population activities and housekeeping detail pending the outcome of an investigation.

As a result of the fight between offenders Henson and Emerson, Jacox issued a report of conduct to Henson for committing battery upon another person without a weapon or inflicting serious injury. Emerson was also issued a similar report of conduct. Jacox prepared and filed the conduct report while Henson and Emerson were in the Duty Office Building. It was Jacox's job to issue the conduct report because he was the officer who observed the institutional infraction – the aggressive and direct physical contact between Henson and Emerson. That same day, a segregation confinement report was issued to Henson to move him to administrative segregation.

A disciplinary hearing was held regarding Henson's actions. He was found guilty and sentenced to 180 days in disciplinary segregation.

On August 12, 2008, Henson filed a Level I grievance with Nickles, a Grievance Officer at Pendleton, against Jacox, Lunsford, Waterman, Beaudry, and Ruttan regarding the events that took place on August 2, 2008. On August 17, 2008, Henson mailed a letter to Internal Affairs requesting an investigation into the events of August 2, 2008.

On August 18, 2008, Nickles emailed a Notice to the G-Cell Counselor in regards to Henson's grievance and complaints regarding the events of August 2, 2008. That same day, Henson was notified that his complaint was under investigation. On September 18, 2008, Nickles interviewed Henson to discuss the Level I Grievance and his findings. Nickles then informed Henson that he had found in favor of the officers involved. On September 18, 2008, IDOC issued a response to Henson's grievance and found in favor of the officers. On September 19, 2008, Henson received an "Offender Grievance Program Return of Grievance" confirming that IDOC had found that the officers involved followed policy. On September 20, 2008, Henson filed a Level II grievance.

On October 8, 2008, Nickles interviewed Henson to discuss the Level II grievance and his findings. At that time, Nickles informed Henson that he had conducted an investigation along with Correctional Major Peckham and had reviewed the surveillance footage. In response to his Level II grievance, Henson was informed that the matter was investigated and that ultimately it was determined that the officers followed policy. Additionally, Henson received a response to his Level II grievance from Executive Assistant Jack Binion informing him that he had found that the officers had followed policy. At that time, it was Henson's understanding that he had exhausted all administrative remedies and as such he proceeded in initiating the instant suit.

## IV. Discussion

A. *Excessive Force*

Henson's first claim is that defendant Lunsford used excessive force in violation of his Eighth Amendment rights while transferring him to the Captain's Office in the Duty Office Building. Lunsford argues that his use of force was not excessive, but was both appropriate and necessary to restore discipline and control in what he perceived to be a potentially volatile situation. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (internal quotation omitted). A § 1983 plaintiff must establish that prison officials acted wantonly; negligence or gross negligence is not enough. *Id.* (citing *Harper v. Albert,* 400 F.3d 1052, 1065 (7th Cir. 2005)).

Here, Lunsford was transporting an offender whom he believed had just engaged in a fight with another inmate in close proximity to the inmate he had just fought with. During transport, Lunsford believed that Henson began to physically resist him. Lunsford perceived Henson's resistance as a major security threat. In response, Lunsford first attempted to regain control using verbal commands and warnings. His attempts were unsuccessful and as such when the matter escalated he felt it necessary to use physical force to subdue Henson and regain control before the situation became volatile. He had not only his own safety but also that of Waterman and Emerson to consider.

Based on the record presented to the Court, it is undisputed that Henson resisted Lunsford and Lunsford used only that force that was necessary and appropriate to restore discipline. The

force was not malicious or wanton. Accordingly, Lunsford is entitled to summary judgment on Henson's claim of excessive force.

B. *Failure to Intervene and/or Protect*

Henson also claims that Defendants Beaudry, Waterman, and Ruttan failed to intervene, stop, or prevent the use of force by Lunsford. He further alleges that this inaction constituted deliberate indifference to his safety in violation of his Eighth Amendment rights.

1. <u>Failure to Intervene</u>

Defendants Waterman, Beaudry, and Ruttan argue that that they cannot be held liable for the alleged excessive use of force by Lunsford. Waterman observed the incident between Henson and Lunsford, but argues that he did not fail to intervene because there was no excessive force in which to intervene. Beaudry and Ruttan argue that because they did not see the altercation, they cannot be held liable for failing to intervene.

Officials "'who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so' may be held liable" as a bystander for failing to intervene. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (quoting *Miller v. Smith,* 220 F.3d 491, 495 (7th Cir. 2000)).

Here, it is undisputed that defendant Waterman observed the incident between Henson and Lunsford, but did not believe Lunsford's use of force was excessive. Rather, he viewed it as an appropriate response, in accordance with IDOC policy, to Henson when he physically resisted during transport and refused verbal commands.

Defendants Beaudry and Ruttan had neither a reason to believe that Lunsford was using excessive force in violation of the Constitution, nor a realistic opportunity to intervene. Beaudry and Ruttan were inside the Duty Office Building when Henson was being transported by Lunsford.

From their posts they could not see Henson being transported and witnessed no use of force against Henson. Further, even if Beaudry or Ruttan had seen Officer Lunsford using force to regain control of Henson, the events transpired so quickly that they would not have had a reasonable opportunity to intervene from their posts. Moreover, a claim for failure to intervene is dependent on an underlying and independent constitutional violation, in this case, excessive force under the Eighth Amendment. *See Filmore v. Page*, 358 F.3d 496 (7th Cir. 2004). Because as discussed above, there was no constitutional violation by Lunsford, defendants Waterman, Beaudry, Ruttan cannot be held liable for failing to intervene.

      2. Failure to Protect

Henson also asserts that defendants Waterman, Beaudry, and Ruttan exhibited deliberate indifference to his needs when they failed to protect him from the alleged excessive force by Lunsford.

To succeed on a claim that a defendant violated his Eighth Amendment rights in this context, the plaintiff must show a serious deprivation, such as conditions that objectively "pos[e] a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 34 (1994). He must also prove that prison officials acted with "deliberate indifference" to his health or safety. *Id*. An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. at 837. The plaintiff must also prove that the defendants acted with more than mere inadvertence or negligence in order to prevail on the theory of deliberate indifference. *Billman v. Indiana Department of Correction*, 56 F.3d 785 (7th Cir. 1995).

Here, there is no evidence that defendants Waterman, Beaudry, or Ruttan knew of any substantial risk of serious harm to Henson much less that they ignored the implications of such a

risk. There had been no altercations between Lunsford and Henson before this incident. Lunsford had never threatened Henson. In these circumstances, Waterman, Beaudry, and Ruttan cannot be held liable for failing to protect Henson from harm by Lunsford.

C. *First Amendment Claims*

Henson next brings multiple claims for retaliation under the First Amendment against defendants Jacox, Nickles, and Rains. In order to establish a *prima facie* case of First Amendment retaliation, a plaintiff "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (*citing Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

1. Jacox

First, Henson claims that defendant Jacox retaliated against him in violation of his First Amendment rights when Jacox filed a conduct report on August 2, 2008, related to the incident with Emerson. Henson alleges that Jacox filed the conduct report in retaliation for Henson stating that he would file grievances, complaints, and pursue a lawsuit and that he planned to inform IDOC officials about Jacox's drug use while on duty. Jacox argues that Henson cannot establish a that he violated his First Amendment rights because Henson was not deterred in pursuing First Amendment activity and because Henson's First Amendment activity was not a motivation factor in Jacox's decision to file the conduct report.

First, it is undisputed that despite the fact that Jacox issued a conduct report against Henson, Henson filed multiple grievances, wrote many letters complaining of actions and inactions taken by various prison officials, and brought the instant suit all subsequent to Jacox

9

filing his conduct report. Additionally, it is undisputed that Henson's protected activity was not a motivating factor in Jacox's action of filing the conduct report and that the report would have been filed regardless of Henson's statements. Henson participated in prohibited conduct when he engaged in aggressive and direct physical contact with Emerson in violation of IDOC policy. It was Jacox's responsibility to report it. Jacox issued a conduct report to Emerson for the incident absent similar statements of intent. Both reports were issued while the offenders were being transferred to the Duty Office Building and prior to Henson's statements of intent to file grievances, complaints, and a lawsuit and to inform IDOC officials of Jacox's alleged drug use. Jacox is therefore entitled to summary judgment on Henson's retaliation claim against him.

2. Nickles

Next, Henson claims that defendant Nickles retaliated against him by refusing to process his grievances pertaining to the altercation with Lunsford. Nickles argues that he did not violate Henson's rights because he was not entitled to any particular outcome from his grievances. "'The First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance.'" *Perales v. Bowlin*, 644 F. Supp. 2d 1090 (N.D. Ind. 2009) (*quoting Jones v. Brown*, 300 F.Supp.2d 674, 679 (N.D.Ind. 2003)). "Denying a grievance or even failure to investigate a prisoner's complaints does not make an official liable for damages under section 1983." *Id.* (*citing George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)).

It is undisputed that Nickles did investigate and respond to Henson's grievances. Because Henson was not entitled under the Constitution to any particular outcome of his grievances, Nickles cannot be held liable for the way he handled his grievances.

3. Rains

Finally, Henson claims that defendant Rains, an Internal Affairs Investigator at Pendleton, retaliated against him in failing to report or discipline the other defendants for their actions on August 2, 2008. Rains argues that his failure to report or discipline the other defendants for their involvement in the events at issue did not amount to a First Amendment violation because his decision not to do so did not amount to retaliation against Henson.

Rains did not conduct an official investigation into Henson's claims nor was he required to do so or asked to do so by the Superintendent. There is no evidence that Rains took any action or failed to act due to a prohibited animus or because Henson sought redress of his grievances. Rains is therefore entitled to summary judgment on Henson's claims against him.

**V. Henson's State Law Claims**

The defendants do not address Henson's state law tort claims related to the incidents at issue in this lawsuit. Having determined that all of Henson's federal claims must be dismissed, the Court turn to the question of whether supplemental jurisdiction over the remaining claims in this case is appropriate. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010). Although the presumption is rebuttable, "it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *R WJ Management Co., Inc. v. BP Prods. N. Am., Inc.,* 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). The Seventh Circuit has identified the following three situations in which a court should retain jurisdiction over supplemental claims even though all federal claims have been dismissed: where the statute of limitations would bar the refiling of the supplemental claims in state court;

where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; or where it is obvious how the claims should be decided. *Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 906–07 (7th Cir. 2007) (citation omitted).

Upon review of the relevant factors and based on the fact that neither party has addressed those claims on summary judgment, the Court finds that the presumption in favor of remanding state claims is not overcome here. Accordingly, Henson's state law claims are dismissed without prejudice.

## VI. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [dkt 172] is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Date: 1/23/15

Distribution:

TIMOTHY G. HENSON, 128238, Indiana State Prison, One Park Row, Michigan City, IN 46360

Electronically registered counsel